UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re                                                    Chapter 13
Domingo A. Abreu,                                        Case No. 14-44033-CEC
                              Debtor.
-----------------------------------------------------------------X
Domingo A. Abreu,
                    Plaintiff,

-against-                                                Adv. Pro. No. 14-1126-CEC


Jamaica Avenue Funding LLC, Club Capital LLC,
ERG Property Advisors LLC, Harris Beach PLLC,
James Guarino, and Robert Chanis,


                    Defendants.
-----------------------------------------------------------------X
Club Capital LLC, ERG Property Advisors LLC,
James Guarino, and Jamaica Avenue Funding LLC,


                    Counter-Claimants,

-against-


Domingo A. Abreu,
                    Counter-Defendant.
-----------------------------------------------------------------X


<u>DECISION</u>


Appearances:


Brian McCaffrey                          David Carlebach
Brian McCaffrey, P.C.                    The Carlebach Law Group
88-18 Sutphin Blvd., 1st Floor           55 Broadway, Suite 1902
Jamaica, NY 11435                        New York, NY 10006
*Attorneys for Plaintiff*                *Attorneys for Jamaica Avenue Funding LLC,*
                                         *Club Capital LLC, ERG Property Advisors*
Eric H Lindenman                         *LLC, and James Guarino*
Harris Beach LLP
805 Third Avenue
New York, NY 10022
*Attorneys for Harris Beach PLLC and*
*Robert Chanis*


CARLA E. CRAIG
Chief United States Bankruptcy Judge

This adversary proceeding was brought by Domingo Abreu, a chapter 13 debtor, (the "Plaintiff") after his failed attempt to arrange for third party financing to pay off his mortgage. Before the Court are two motions to dismiss: one brought by the attorney who advised the potential third-party lenders during the negotiations, Robert Chanis, and his law firm Harris Beach PLLC (together, the "Harris Beach Defendants"); and one brought by ERG Property Advisors LLC ("ERG"), James Guarino, Club Capital LLC and Jamaica Avenue Funding LLC (together, the "ERG Defendants"). Mr. Abreu first sued the six defendants in New York Supreme Court (the "State Court"), before filing for bankruptcy protection and initiating this adversary proceeding. After the Harris Beach Defendants moved to dismiss the adversary proceeding under Rule 12(b)(6) but before the ERG Defendants moved to dismiss the adversary proceeding, the State Court dismissed the complaint as to all defendants except for Club Capital LLC. The Plaintiff argues that the State Court was stayed from dismissing his causes of action that, according to the Plaintiff, were brought "in defense" of the tortious actions of the defendants.

For the following reasons, including that the Plaintiff initiated the action in State Court, the automatic stay did not prevent the State Court from rendering its decision and dismissing the State Court action. Further, the doctrine of collateral estoppel precludes the Plaintiff from relitigating his claims here. Finally, the Plaintiff has failed to allege sufficient facts, accepted as true, to support a claim for relief that is plausible on its face against the Harris Beach Defendants, and his claims against the Harris Beach Defendants are dismissed for this reason as well.

## JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b), and the

Eastern District of New York standing order of reference dated August 28, 1986, as amended by

order dated December 5, 2012.  Pursuant to a joint statement, the parties have stipulated to the

Court entering final orders and judgments in this proceeding.  (Joint Statement, ECF No. 21.)[1]

This Court has jurisdiction to enter final orders and judgments in this proceeding pursuant to 28

U.S.C. § 157(c)(2).  See Executive Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165, 2172

(2014) ("If all parties 'consent,' the statute permits the bankruptcy judge 'to hear and determine

and to enter appropriate orders and judgments' as if the proceeding were core.") (quoting 28

U.S.C. § 157(c)(2)); Fed. R. Bankr. P. 7012(b) ("In non-core proceedings final orders and

judgments shall not be entered on the bankruptcy judge's order except with the express consent

of the parties.").  This decision constitutes the Court's findings of fact and conclusions of law to

the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The relevant allegations of the Complaint may be summarized as follows.  On May 12,

2006, the Plaintiff borrowed $427,500 from Green Point Savings Bank in order to purchase real

property located at 202-19 Jamaica Avenue, Queens, New York, 11423.  (Complaint ¶ 8, ECF

No. 1.)  On December 15, 2011, the note and mortgage on the property were assigned to U.S.

Bank, N.A. as Trustee ("U.S. Bank").  (Complaint ¶ 8, ECF No. 1.)  Early in 2012, the Plaintiff

fell behind on his mortgage payments and started negotiating with U.S. Bank's mortgage

servicer, Jemcap LLC ("Jemcap"), seeking to avoid foreclosure.  (Complaint ¶ 10, ECF No. 1.)

---

[1] Citations to "ECF No." are to papers filed on the docket of the Adversary Proceeding, Case Number 14-1126-CEC.

As a result of these negotiations, in August 2013, the Plaintiff and Jemcap negotiated a deal: Jemcap would accept a payoff amount of $300,000 to satisfy the note and mortgage, which at the time had an unpaid principal balance of $482,425 (Complaint ¶ 13, ECF No. 1; Harris Beach Motion to Dismiss 2, ECF No. 5; Opp. to Harris Beach Motion to Dismiss ¶ 16, ECF No. 13). The parties disagree about whether the Plaintiff and Jemcap entered into an enforceable agreement regarding the payoff of the note and mortgage. The Plaintiff states that he had an enforceable agreement with Jemcap (Complaint ¶ 13, ECF No. 1; Opp. to Harris Beach Motion to Dismiss ¶ 16, ECF No. 13; Nov. 18, 2014 Tr. 22:19-27:16, ECF No. 22), and the Harris Beach Defendants state that the Plaintiff and Jemcap never entered into an enforceable agreement (Harris Beach Motion to Dismiss 2, ECF No. 5).

In any event, the parties agree that, although he did try, the Plaintiff never obtained $300,000 to pay off the loan. After the Plaintiff negotiated his deal with Jemcap, he contacted "hard money lenders in his neighborhood" for the funds. (Complaint ¶ 14, ECF No. 1.) In the process, he contacted two of the defendants, ERG and James Guarino. (Complaint ¶ 15, ECF No. 1.) The Plaintiff alleges that ERG made an offer to loan him $300,000 at 12% interest for one year with an option for an additional year extension and a requirement that the Plaintiff pay a 4% broker's fee at closing. (Complaint ¶ 16, ECF No. 1.) The Plaintiff further alleges that:

> The parties agreed that as added security for James Guarino and ERG, in the event that the Plaintiff defaulted on the new hard money loan, the transaction would be structured as a note purchase with forbearance where the full amount of the unpaid principal balance on the existing loan would come due in the event of default.

(Complaint ¶ 17, ECF No. 1.) The Harris Beach Defendants, representing James Guarino and Jamaica Avenue Funding LLC, then conducted due diligence with Jemcap for this proposed transaction. (Complaint ¶ 19, ECF No. 1; Harris Beach Motion to Dismiss 2, ECF No. 5.) The Plaintiff alleges that although he wanted to close the note purchase and the hard money loan at

3

the same time, the ERG Defendants did not oblige, and instead purchased the note and mortgage

directly from Jemcap for $300,000 — the same price that the Plaintiff previously negotiated.

(Complaint ¶ 20, ECF No. 1.)

Ultimately, the Plaintiff never closed on the loan with the ERG Defendants.  The Plaintiff

alleges that Mr. Guarino set a deadline of March 21, 2014 to close on the transaction with the

terms as originally agreed, and that although the Plaintiff was ready to close on that date, the

Harris Beach Defendants were not, so the closing never happened.  (Complaint ¶¶ 21-24, ECF

No. 1.)  The Plaintiff alleges that after this failed closing attempt, he was unable to get in contact

with the Harris Beach Defendants, Mr. Guarino, or ERG.  (Complaint ¶ 25, ECF No. 1.)  The

Plaintiff alleges that thereafter, Mr. Guarino began to demand changes the terms of the loan.

(Complaint ¶ 26, ECF No. 1.)

The Plaintiff alleges that the Harris Beach Defendants insisted that he form a corporation

"for the purpose of avoiding the usury statutes" and that, as a result, he formed DACLC, Inc. on

March 27, 2014.  (Complaint ¶¶ 28 and 29, ECF No. 1.)  The Plaintiff alleges that:

> In response to this hostage situation, the Plaintiff was coerced into agreeing to
> terms and conditions with the understanding that Plaintiff would commence an
> action centering on being coerced into a contract of adhesion sounding in the
> causes of action laid out [in the Complaint].

(Complaint ¶ 31, ECF No. 1.)  Despite these allegations, the Plaintiff does not actually contend

that he entered into a contract with any of the Defendants.  (Nov. 18, 2014 Tr. 28:4-8, ECF No.

22.)

Instead, on April 16, 2014, he filed a lawsuit against the defendants in the State Court

(the "State Court Action").  (State Court Decision 2, ECF No. 24 Ex. C.)  The State Court Action

includes six causes of action: tortious interference with contract, tortious interference with

prospective economic advantage, conversion, usury, fraudulent inducement, and unjust

enrichment.  (State Court Complaint, ECF No. 28 Ex. E.)  The ERG Defendants moved to

dismiss the State Court Action pursuant to CPLR 3211(a)(1) and (7), and the Harris Beach

Defendants moved to dismiss the State Court Action pursuant to CPLR 3211(a)(7) and for an

award of costs and attorneys' fees, including sanctions against the Plaintiff and his counsel in the

State Court Action (the "State Court Counterclaims").  (State Court Decision 1, ECF No. 24 Ex.

C.)  These motions were fully briefed by the parties by August 2014.  (State Court Docket, ECF

No. 28 Ex. B.)

On August 5, 2014, the Plaintiff filed for bankruptcy protection (Case No. 14-44033-cec).

On August 8, 2014, the Harris Beach Defendants filed a letter advising the State Court of the

bankruptcy filing, and stating that the State Court Action, including the pending motions to

dismiss, was stayed.  (ECF No. 24, Exs. A and B.)

On September 17, 2014, the Plaintiff filed this adversary proceeding.  The adversary

proceeding complaint (the "Complaint") contains the same six causes of action as the State Court

Action: tortious interference with contract, tortious interference with prospective economic

advantage, conversion, usury, fraudulent inducement, and unjust enrichment.  (Complaint, ECF

No. 1.)  The Plaintiff seeks an order declaring that the ERG Defendants' purchase of the note and

mortgage from Jemcap (who is not a party to this action) is null and void; an order declaring that

the contract "which the Defendants attempted to coerce the Plaintiff into accepting" is void; an

order relieving the Plaintiff of any obligation to make payments on the mortgage and note; an

order expunging the publically recorded assignments to the ERG Defendants relating to the

mortgage and note; an order awarding possession of the mortgage and note to the Plaintiff; and

$182,425 in damages.  (Complaint 21, ECF No. 1.)  In the alternative, the Plaintiff seeks an order

allowing him to pay off the note and mortgage for $300,000.  (Complaint 21, ECF No. 1.)  On

October 20, 2014, the Harris Beach Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Harris Beach Motion to Dismiss").  (Harris Beach Motion to Dismiss, ECF No. 5.)  After a hearing on November 18, 2014, the Court reserved decision on the Harris Beach Motion to Dismiss.

On December 15, 2014, the State Court entered a decision dismissing the State Court Action for failure to state a cause of action against Jamaica Avenue Funding LLC, ERG, Harris Beach PLLC, James Guarino, and Robert Chanis (the "State Court Decision").  The State Court denied Club Capital LLC's motion to dismiss the State Court Action against it because Club Capital LLC failed to move within the time provided by CPLR 320(a).  (State Court Decision 4, ECF No. 24 Ex. C.)  The State Court denied the State Court Counterclaims.  (State Court Decision 7, ECF No. 24 Ex. C.)

On January 6, 2015, this Court issued an order calling for additional briefing on the issue of whether State Court Decision should be given preclusive effect, and directing the parties to appear at a pre-trial conference.  (Jan. 6, 2015 Order, ECF No. 25.)  At the pre-trial conference on January 22, 2015, the Harris Beach Defendants orally moved to dismiss the Complaint, based on the State Court Decision's preclusive effect.  (Jan. 22, 2015 Tr. 17:11-25, ECF No. 32.)  On February 6, 2015, ERG Defendants filed a motion to dismiss the Complaint, also based on the State Court Decision's preclusive effect (the "ERG Motion to Dismiss").  (ERG Motion to Dismiss, ECF No. 34.)  The Plaintiff filed opposition on March 6, 2015 (Opp. to ERG Motion to Dismiss, ECF No. 36), and the Court reserved decision on March 10, 2015.

## LEGAL STANDARD

### I.    Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b), provides that a complaint may be dismissed

"for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b).  The purpose of Rule 12(b)(6) "'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'"  Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (quoting Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In making this determination, a court must liberally construe the complaint, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff.  Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).  However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  A complaint must make a "'showing,' rather than a blanket assertion, of entitlement to relief" supported by sufficient "factual allegation[s]."  Twombly, 550 U.S. at 556 n.3.  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  Iqbal, 556 U.S. at 678 (alteration in original) (citations and internal quotation marked omitted).

## II.    The Automatic Stay

Under § 362(a), the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other

action or proceeding <u>against the debtor</u> that was . . . commenced before the commencement of the case . . . ."[2] 11 U.S.C. § 362 (emphasis added).  In other words, the automatic stay only applies when the action is "against" the debtor.  <u>Koolik v. Markowitz</u>, 40 F.3d 567, 568 (2d Cir. 1994).  "The § 362 stay provision 'does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate.'"  <u>Vasile v. Dean Witter Reynolds Inc.</u>, 20 F. Supp. 2d 465, 499 (E.D.N.Y. 1998) (quoting <u>Carley Capital Grp. v. Fireman's Fund Ins. Co.</u>, 889 F.2d 1126, 1127 (D.C. Cir. 1989) (per curiam)).  "Thus § 362(a) does not 'prevent entities against whom the debtor proceeds in an offensive posture — for example, by initiating a judicial or adversarial proceeding — from protecting their legal rights.'"  <u>Dean Witter</u>, 20 F. Supp. 2d at 499 (quoting <u>In re Financial News Network Inc.</u>, 158 B.R. 570, 573 (S.D.N.Y.1993)).

Nevertheless, as several courts have recognized, counterclaims against a debtor in a lawsuit initiated by the debtor are stayed by the filing of a bankruptcy petition.  <u>See</u> <u>Educ. Res. Inst., Inc. v. Concannon</u>, 896 N.Y.S. 2d 306 (N.Y. App. Div. 1st Dep't 2010) (holding that although the automatic stay "only applies to proceedings 'against' the debtor . . . counterclaims seeking affirmative relief against a debtor implicate the automatic stay"); <u>Derringer v. Fitch</u>, No. Civ.-03-149, 2005 WL 5111008, at *1 (D.N.M. June 8, 2005) (holding that "an answer that asserts a counterclaim against a plaintiff who then becomes a bankruptcy debtor is an 'action or proceeding against' the debtor within the meaning of § 362(a)(1), notwithstanding the fact that the debtor initiated the lawsuit."); <u>Dean Witter</u>, 20 F. Supp. 2d at 499 (holding that "the counterclaims asserted against the Plaintiff/debtor will be stayed pending final determination of the bankruptcy petition.").

---

[2] Unless otherwise indicated, "Section" or "§" refers to a section under title 11 of the United States Code (the "Bankruptcy Code").

Although counterclaims against a debtor are stayed by the filing of a bankruptcy petition, "[u]nder the principle of 'disaggregation,' a stay of some claims does not require a stay of all claims in the case." Kozaczek v. ConServe, No. 1:12-CV-55, 2013 WL 5274851, at *1 (D. Vt. Sept. 18, 2013); see also Mar. Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204-05 (3d Cir. 1991) ("All proceedings in a single case are not lumped together for purposes of automatic stay analysis. . . . Multiple claim . . . litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay.").

## III.    Res Judicata (Claim Preclusion) and Collateral Estoppel (Issue Preclusion)

"'Res judicata, or claim preclusion, operates to prevent a party from re-litigating a claim after the claim has already been decided by a court of competent jurisdiction.'" In re Sanders, 408 B.R. 25, 34 (Bankr. E.D.N.Y. 2009) (quoting Charell v. Gonzalez (In re Gonzalez), 241 B.R. 67, 72 (S.D.N.Y. 1999)). "Collateral estoppel, however, is a narrower doctrine than res judicata, and serves to preclude parties from relitigating specific issues that were 'raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action.'" In re Nicholas, 457 B.R. 202, 219 (Bankr. E.D.N.Y. 2011) (quoting In re Adler, 395 B.R. 827, 835 (E.D.N.Y. 2008)).

As the Supreme Court has recognized, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . ." Allen v. McCurry, 449 U.S. 90, 96 (1980). Under 28 U.S.C. § 1738, "judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . ." 28 U.S.C. § 1738. "Bankruptcy courts fall within Congress' mandate." Kelleran v. Andrijevic, 825 F.2d 692, 694 (2d Cir. 1987).

"To determine the preclusive effect of a state court decision, a federal court must apply the standard used by the state in which the decision was rendered." <u>Sanders</u>, 408 B.R. at 34; <u>see also</u> <u>In re Fischer</u>, 252 B.R. 603, 613 (Bankr. E.D.N.Y. 2000) ("To determine whether the claim asserted in this bankruptcy proceeding is precluded by the prior state court judgment, the Court looks to the doctrine of res judicata as developed in the New York state courts."). With respect to claim preclusion (res judicata),

> The doctrine of res judicata precludes a party from litigating a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter . . . . Under New York's transactional approach to the rule, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy . . . .

<u>Josey v. Goord</u>, 9 N.Y.3d 386, 389-90 (2007) (internal quotations and citations omitted).

However, under New York Law, "A judgment or decision not on the case's merits . . . has no preclusive effect for res judicata purposes." <u>DDR Const. Servs., Inc. v. Siemens Indus., Inc.</u>, 770 F. Supp. 2d 627, 647 (S.D.N.Y. 2011). "[A] dismissal pursuant to N.Y. C.P.L.R. 3211(a)(7), for failure to state a cause of action, is presumptively not on a case's merits and lacks res judicata effect; indeed a Rule 3211(a)(7) dismissal is only on a cases merits if the rendering court explicitly says so." <u>DDR Const.</u>, 770 F. Supp. 2d at 647. In other words,

> When a complaint is dismissed for legal insufficiency or other defect in the pleading, it does not act as a bar to the commencement of a new action for the same relief unless the dismissal was expressly made on the merits or the new complaint fails to correct the defects or omissions fatal to the prior one.

<u>Furia v. Furia</u>, 498 N.Y.S.2d 12 (N.Y. App. Div. 2d Dep't 1986); <u>see also</u> <u>Garg v. Albert Einstein Coll. of Med. of Yeshiva Univ.</u>, 747 F. Supp. 231, 236 (S.D.N.Y. 1990) ("where . . . a New York state court dismisses an action under . . . CPLR 3211(a)(7) for failure to state a claim and does not state that its decision was on the merits, that judgment will only preclude actions

which are brought upon the same theories of liability or which fail to correct the defects of the original pleading.").

With respect to collateral estoppel (issue preclusion), "Under New York law, collateral estoppel precludes a party from relitigating an issue when: '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" In re Abir, No. 09-CV-2871, 2010 WL 1169929, at *6 (E.D.N.Y. Mar. 22, 2010) (quoting Vargas v. City of New York 377 F.3d 200, 205-06 (2d Cir.2004)).

## **DISCUSSION**

### I.    **Whether the Automatic Stay Applied to the State Court Action**

The Harris Beach Defendants and the ERG Defendants both argue that the automatic stay did not preclude the State Court from entering its decision.  (Harris Beach Preclusion Brief 1-2, ECF No. 28; ERG Motion to Dismiss 3, ECF No. 34.)  The defendants argue, in substance, that because the State Court Action concerned claims asserted by the Plaintiff against the defendants, it was not an action "against" the Plaintiff and therefore was not stayed when he filed for bankruptcy.

The Plaintiff argues, in substance, that the automatic stay was in effect when the State Court rendered its decision because the "issues at bar" in the State Court Action are against the Plaintiff.  That is, he argues that he filed the State Court Action in defense of the tortious actions of the defendants.  (Opp. to ERG Motion to Dismiss 2, ECF No. 36.)  He notes that Jamaica Ave. Funding LLC commenced a foreclosure action against the Plaintiff in June 2014, two months after he filed the State Court Action and two months before he filed for bankruptcy protection (the "Foreclosure Action").  He argues that because the State Court Action is "in essence" a counterclaim to the Foreclosure Action, the issues in both actions are so intertwined that they

must be heard together and the automatic stay applies to both.  (Opp. to ERG Motion to Dismiss 3, ECF No. 36.)

As discussed above, the automatic stay only applies to actions asserted "against" a debtor.  11 U.S.C. § 362(a).  Here, the automatic stay did not preclude the State Court from deciding the ERG Defendants' and the Harris Beach Defendants' motions to dismiss, to the extent that they sought dismissal of the claims brought by the Plaintiff.  Although the Foreclosure Action is related to the State Court Action insofar as both actions relate to the same real property, in the context of automatic stay analysis, "litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay."  Mar. Elec. Co., 959 F.2d at 1204-05.  The Plaintiff's argument that the State Court Action is "in essence" a counterclaim to the Foreclosure Action must be rejected because, first, the State Court Action was initiated prior to the Foreclosure Action and is plainly not a counterclaim, and second, even if the Plaintiff had asserted these causes of action against the defendants in a counterclaim to the Foreclosure Action, they would be disaggregated for the purposes of determining whether the automatic stay applied and, as causes of action initiated by a debtor, would not be stayed.

The Plaintiff also argues that the State Court Decision was an *ultra vires* act because the State Court Action was removed from the State Court prior to it rendering its decision.  He argues that the State Court Action was removed to federal court when the Harris Beach Defendants filed a letter advising the State Court of the bankruptcy filing and the parties filed a joint statement consenting to the jurisdiction of the bankruptcy court to enter final orders and judgments pursuant to 28 U.S.C. § 157(c)(2).  (Opp. to ERG Motion to Dismiss 3-5, ECF No.

36.)  This argument must be rejected.  In order to remove a state court action to bankruptcy court, a party must comply with Bankruptcy Rule 9027, which requires a party seeking to remove an action to file a notice of removal with the clerk of the bankruptcy court "within which is located the . . . court in which the civil action [to be removed] is pending," serve a copy of it on all parties to be removed, and promptly file a copy of it with the clerk of the court from which the cause of action is removed; removal is effected upon the filing of the notice with the court from which the cause of action is being removed.  Fed. R. Bankr. P. 9027.  Here, no party filed a notice of removal in any court, so the State Court Action was never removed, and therefore the State Court Decision was not an *ultra vires* act.

## II.    Whether the State Court Decision Should Be Given Preclusive Effect

The Harris Beach Defendants argue that the State Court decided a number of issues that, when given preclusive effect, require the Court to dismiss all of the claims against them in this proceeding.  They also argue that the State Court Decision is preclusive on the specific claims of unjust enrichment and fraudulent inducement.  (Harris Beach Preclusion Brief, ECF No. 28.) The ERG Defendants cite generally to both issue preclusion and claim preclusion, and argue, in substance, that because the State Court Complaint contained allegations that were virtually identical to those in the Complaint, the State Court Decision should be given preclusive effect. (ERG Motion to Dismiss 4, ECF No. 34.)  The Plaintiff responds that the State Court Decision should not be given preclusive because the State Court Action should have been stayed when he filed for bankruptcy.  (Jan. 22, 2015 Tr., 12:12-13:6).

The State Court did not expressly state that the dismissal of the State Court Complaint was on the merits, as to any of the defendants.[3]  Therefore, under New York law, the State Court's dismissal is not the merits and lacks res judicata effect.  See DDR Const., 770 F. Supp. 2d at 647.  However, the State Court's determination of issues may be entitled to preclusive effect under the doctrine of collateral estoppel (issue preclusion).  It is therefore necessary to determine whether the State Court Decision is preclusive as to any issues that would require dismissal of any of the causes of action here.

"Bankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction."  Kelleran, 825 F.2d at 695.  Here, the Complaint contains the same six New York State law causes of action that were asserted in the State Court Complaint: tortious interference with contract, tortious interference with prospective economic advantage, conversion, usury, fraudulent inducement, and unjust enrichment.  The factual allegations in the Complaint are virtually identical to the factual allegations in the State Court Complaint.  The Complaint relates to the same transaction as does State Court Complaint, namely, the Plaintiff's failed attempt to arrange for third party financing to pay off his mortgage.  The defendants in the State Court Action are identical to the defendants in this adversary proceeding, and the Plaintiff requests the same relief in the State Court Complaint that he requests in the Complaint.  Further, the record supports the conclusion that the Plaintiff had a full and fair opportunity to litigate the motions to dismiss in State Court.  (State Court Docket, ECF No. 28 Ex. B.)  Therefore, to the extent that the State Court decided that the State Court Complaint failed to state a particular

---

[3] The State Court stated, "in light of the strong public policy in favor of deciding matters on their merits, . . . the motion by [the Harris Beach Defendants] to dismiss the complaint insofar as asserted against them shall be entertained by the Court."  (State Court Decision 4, ECF No. 24 Ex. C.)  This is not, however, an express statement that the State Court was deciding the Harris Beach Motion to Dismiss on the merits, because the statement was in the context of denying the Plaintiff's cross-motion for default judgment against the Harris Beach defendants.  Id.

cause of action against any of the defendants, the Plaintiff will be collaterally estopped from asserting such cause of action here.

The State Court discussed, in detail, dismissal of the tortious interference with contract, tortious interference with prospective economic advantage, usury, fraudulent inducement, and unjust enrichment claims against Robert Chanis, Harris Beach PLLC, ERG, James Guarino, and Jamaica Avenue Funding LLC.  The issue in question — whether the State Court Complaint states a cause of action — was actually and necessarily decided pursuant to CPLR 3211(a)(7), and the Plaintiff had a full and fair opportunity to litigate the issue in the State Court.  It follows that the tortious interference with contract, tortious interference with prospective economic advantage, usury, fraudulent inducement, and unjust enrichment claims, insofar as they are asserted against Robert Chanis, Harris Beach PLLC, ERG, James Guarino, and Jamaica Avenue Funding LLC, must be dismissed.

Although the State Court did not discuss the conversion claim against any of the defendants in its decision, the Plaintiff is still collaterally estopped from asserting it here.  As discussed above, collateral estoppel depends on whether the issue in question was actually litigated in a prior proceeding.  "When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated . . . ." Restatement (Second) of Judgments § 27 cmt. d (1982).  In Legal Aid Soc'y v. City of New York, No. 96-CIV.-5141, 1997 WL 394609 (S.D.N.Y. July 11, 1997), the plaintiff filed suit against the City of New York seeking relief under certain state and city laws as well as 42 U.S.C. § 1983.  The Plaintiff raised the § 1983 claim in "its pleading and in both its moving and reply memoranda in the state court proceeding," but the state court's decision dismissed the proceeding in a written decision that did not specifically address the claim.  The Court held that

because the state court dismissed the plaintiff's complaint in its entirety, "the state court must have necessarily decided the issue" of whether the § 1983 claim should be dismissed.  <u>Legal Aid,</u> 1997 WL 394609, at *5-6.

Here, the Plaintiff raised the conversion claim in the State Court Complaint, and the State Court dismissed the State Court Complaint "insofar as it [was] asserted" against Robert Chanis, Harris Beach PLLC, ERG, James Guarino, and Jamaica Avenue Funding LLC.  Therefore, because the conversion claim was properly raised, submitted for determination by the State Court, and dismissed by the State Court, it was actually litigated in the State Court Action and the Plaintiff is collaterally estopped from asserting it here.  For this reason, the conversion claims against Robert Chanis, Harris Beach PLLC, ERG, James Guarino, and Jamaica Avenue Funding LLC must be dismissed.

Although the State Court denied Club Capital LLC's motion to dismiss because the motion was not made within the time provided by CPLR 320(a), the ERG Defendants move to dismiss the Complaint against Club Capital LLC based on the State Court Decision's collateral estoppel effect.  (ERG Motion to Dismiss 2, ECF No. 34.)  In the State Court Complaint (as well as the Complaint here), the Plaintiff alleges that Club Capital LLC was the registered agent of, and had the same corporate address as, Jamaica Avenue Funding LLC, and that he included Club Capital LLC as a necessary defendant because of the possibility that Club Capital LLC has an ownership interest in Jamaica Avenue Funding LLC.  (State Court Complaint ¶ 9, ECF No. 28 Ex. E; Complaint ¶ 9, ECF No. 1.)

The Plaintiff makes no specific allegations with respect to Club Capital LLC in either the State Court Complaint or the Complaint.  The only reason that Club Capital LLC is included in the Complaint is that it is a registered agent for Jamaica Avenue Funding LLC.  Therefore, the

issue of whether the Complaint states a cause of action against Club Capital LLC is identical to the issue of whether the Complaint states a cause of action against Jamaica Avenue Funding LLC. Because the State Court decided that the Plaintiff failed to state a cause of action for tortious interference with contract, tortious interference with prospective economic advantage, usury, fraudulent inducement, and unjust enrichment against Jamaica Avenue Funding LLC, these causes of action must also be dismissed as against Club Capital LLC.

### III.    Whether the Complaint States a Claim against the Harris Beach Defendants

Even if the State Court Action were not given preclusive effect, the Complaint fails to state a cause of action against the Harris Beach Defendants. The Plaintiff's claims against the Harris Beach Defendants are, in substance, that they acted together with the ERG Defendants in avoiding closing on the hard money loan under the terms as originally negotiated, so that the ERG Defendants could get more negotiating leverage and increase their profit on the deal. (Opp. to Harris Beach Motion to Dismiss ¶ 38, ECF No. 13.) He alleges six causes of action against the Harris Beach Defendants: tortious interference with contract, tortious interference with prospective economic advantage, conversion, usury, fraudulent inducement, and unjust enrichment.

For the tortious interference claims, the Plaintiff alleges that the Harris Beach Defendants tortiously interfered with his contract with Jemcap, and tortiously interfered with his business relations with Jemcap, by acting in concert with the ERG Defendants to purchase the note and mortgage from Jemcap for $300,000. (Nov. 18, 2014 Tr. 22:19-27:16, ECF No. 22.) His conversion claim is based on the theory that the Harris Beach Defendants acted in concert with the ERG Defendants to steal the $182,425 discount (the difference between the unpaid principal balance on his note and the $300,000 payoff amount) that the Plaintiff negotiated with Jemcap. He alleges that after the ERG Defendants purchased the note and mortgage from Jemcap, they

and the Harris Beach Defendants acted in concert to coerce the Plaintiff into agreeing to a new loan with usurious terms.  He further alleges that the Harris Beach Defendants were "intimately involved" in the scheming by the ERG Defendants, and as such should be liable for the ERG Defendants' fraudulent actions.  (Opp. to Harris Beach Motion to Dismiss ¶ 34, ECF No. 13.)  Finally, he alleges that the Harris Beach Defendants were unjustly enriched by their actions.  Each of the Plaintiff's claims against the Harris Beach Defendants will be addressed, in turn.

### a. Count One: Tortious Interference with a Contract

The Harris Beach Defendants argue that the tortious interference with contract claim should be dismissed because the Complaint only alleges actions that they properly took in representing their clients.  (Harris Beach Motion to Dismiss 5, ECF No. 5.)  They also argue that the claim should be dismissed because the Plaintiff failed to allege the existence of a contract that was breached by a third party, and he failed to allege any conduct by which the Harris Beach Defendants induced a breach of contract.  (Harris Beach Motion to Dismiss 9-11, ECF No. 5.)

The Plaintiff responds that the Harris Beach Defendants "colluded with the [ERG Defendants] by avoiding closing the hard money transaction so that they could further assist their client in creating a hostage situation for negotiating, inflating their legal fees, and increasing the return to their client."  (Opp. to Harris Beach Motion to Dismiss ¶ 38, ECF No. 13.)  Further, at the hearing on the motion to dismiss, the Plaintiff's counsel argued that, although it may not expressly appear in his pleadings, it is a fair inference from the pleadings that the Plaintiff actually had a contract with Jemcap that was breached by Jemcap when the Defendants purchased the note and mortgage for $300,000.  (Nov. 18, 2014 Tr. 22:19-27:16, ECF No. 22.)

"Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's

breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" Kirch v. Liberty Media Corp., 449 F.3d 388, 401-02 (2d Cir. 2006) (quoting Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370, 1375 (N.Y. 1996)). In other words, "where there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior . . . ." NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc., 664 N.E.2d 492, 496 (N.Y. 1996).

However, claims of tortious interference with contract asserted against attorneys acting on behalf of clients are evaluated based on a higher standard. As several courts have recognized, "Attorneys are not liable to third parties for tortious interference with contract based on actions taken on behalf of, and advice given to, their clients, absent a showing of fraud or bad faith." Finkel v. E.A. Technologies, Inc., No. 11-CV-5662, 2014 WL 4364757, at *10 (E.D.N.Y. Sept. 3, 2014); see also Zhang v. Wang, No. 05-CV-3888, 2006 WL 2927173, at *2 (E.D.N.Y. Oct. 12, 2006) ("'Absent a showing of fraud or collusion, or of a malicious or tortious act, an attorney is not liable to third parties for purported injuries caused by services performed on behalf of a client or advice offered to that client.'") (quoting Burger v. Brookhaven Med. Arts Bldg., 516 N.Y.S.2d 705, 708 (N.Y. App. Div. 2d Dep't 1987)).

Here, accepting all allegations in the Complaint as true and drawing all inferences in favor of the Plaintiff, as the Court must, the Complaint does not contain facts to support an inference that the Harris Beach Defendants, who are attorneys that were, at all relevant times, acting on behalf of their clients, the ERG Defendants, acted in bad faith, committed fraud, or acted in an otherwise malicious way. The Plaintiff alleges that the Harris Beach Defendants contacted Jemcap after the Plaintiff and the ERG Defendants reached their deal. (Complaint

¶ 19, ECF No. 1.)  He alleges that after Mr. Guarino set a closing deadline of March 21, the

Harris Beach Defendants stated that they were unable to close by that date.  (Complaint ¶ 22,

ECF No. 1.)  He alleges that after the failed closing, the Harris Beach Defendants told the

Plaintiff that he should contact the ERG Defendants for discussions relating to the transaction.

(Complaint ¶ 25, ECF No. 1.)  Finally, he alleges that the Harris Beach Defendants "insisted that

the Plaintiff . . . form a corporation for the purpose of avoiding the usury statutes . . . ."

(Complaint ¶ 28, ECF No. 1.)

Although the Plaintiff labels the actions taken by the Harris Beach defendants as

"intentional[] and improper[]" (Complaint ¶ 46, ECF No. 1), this characterization is conclusory

and precisely the type of "blanket assertion" that is insufficient to state a claim.  Twombly, 550

U.S. at 556 n.3.  The Plaintiff alleges no facts to support an inference that the Harris Beach

Defendants acted outside the scope of their attorney-client relationship with the ERG

Defendants.  The Plaintiff fails to explain how the actions of the Harris Beach Defendants

demonstrate bad faith, fraud, or malicious conduct, and his conclusory allegations that the Harris

Beach Defendants colluded with the ERG Defendants are unaccompanied by any factual support

that would permit an inference that the Harris Beach Defendants acted other than in their

capacity as attorneys for the ERG Defendants.  See Four Finger Art Factory, Inc. v. Dinicola,

No. 99-CIV-1259, 2001 WL 21248, at *7 (S.D.N.Y. Jan. 9, 2001) ("[I]f an attorney . . . takes

actions that induce a breach of contract while acting within the scope of an agency relationship

and is not motivated by personal gain, the attorney or agent is not liable to the third party for

tortious interference with contract.").  For these reasons as well, the Plaintiff's tortious

interference with a contract claim against the Harris Beach Defendants is dismissed.

### b. Count Two: Tortious Interference with a Prospective Economic Advantage

The Harris Beach Defendants argue that the tortious interference with a prospective economic advantage claim should be dismissed because the Complaint fails to allege any criminal, tortious, or purposely harmful conduct by the Harris Beach Defendants.  They argue that the Harris Beach Defendants were acting in their own economic self-interest, and that there is no suggestion in the Complaint that they did anything other than conduct routine due diligence on the deal with Jemcap.  (Harris Beach Motion to Dismiss 12-14, ECF No. 5.)  As with the tortious interference with contract claim, the Plaintiff responds, in substance, that the Harris Beach Defendants' actions in first contacting Jemcap to investigate the note and mortgage, and then avoiding closing the hard money transaction, amounted to intentional interference with the economic advantage that the Plaintiff expected after negotiating a payoff with Jemcap.  (Opp. to Harris Beach Motion to Dismiss ¶ 38, ECF No. 13.)

Tortious interference with a prospective economic advantage is also known as tortious interference with business relations.  See Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C., 455 F. App'x 102, 105 (2d Cir. 2012) (stating that "tortious interference with business relations and tortious interference with prospective economic advantage are not distinct causes of action.").  Under New York law, the elements of tortious interference with a prospective economic advantage are: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008).  The third element of this cause of action — that the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means — requires allegations of "a greater degree of culpable conduct than would be required to state a claim for tortious interference with

contract." In re Nicholas, 457 B.R. at 224. See also In re Bernard L. Madoff Inv. Sec. LLC, 440

B.R. 282, 295 (Bankr. S.D.N.Y. 2010) ("While the elements for tortious interference with

business relations are similar to the elements for tortious interference with a contract, a plaintiff

must show 'more culpable conduct on the part of the defendant' to satisfy element (3) for a

tortious interference with business relations claim.") (quoting NBT Bancorp, 664 N.E.2d at 496).

As with the tortious interference with a contract claim, the Complaint does not contain

facts, other than conclusory allegations, to support an inference that the Harris Beach Defendants

acted for a wrongful purpose or used dishonest, unfair, or improper means, in their dealings with

the Plaintiff.  For these reasons as well, the Plaintiff's tortious interference with a prospective

economic advantage claim against the Harris Beach Defendants is dismissed.

### c.  Count Three: Conversion

The Harris Beach Defendants argue that the conversion claim should be dismissed

because the discount that the plaintiff negotiated with Jemcap is not property that can be the

subject of a conversion claim.  (Harris Beach Motion to Dismiss 14-17, ECF No. 5.)  The

Plaintiff responds that the defendants conspired to "skim the equity" from the property — in

substance, his argument is that the Harris Beach Defendants acted in concert with the ERG

Defendants to steal the benefit of the agreement that the Plaintiff negotiated with Jemcap, in

order to make a profit.  (Opp. to Harris Beach Motion to Dismiss ¶ 61, ECF No. 13.)

Under New York law, "'conversion is the unauthorized assumption and exercise of the

right of ownership over goods belonging to another to the exclusion of the owner's rights.'"

Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 2006) (quoting Vigilant Ins.

Co. of Am. v. Hous. Auth., 660 N.E.2d 1121 (N.Y. 1995)).  "'Two key elements of conversion

are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over

the property or interference with it, in derogation of plaintiff's rights.'"  Envtl. Servs., Inc. v.

Recycle Green Servs., Inc., 7 F. Supp. 3d 260, 275 (E.D.N.Y. 2014) (quoting T.D. Bank, N.A. v.

JP Morgan Chase Bank, N.A., No. 10-CV-2843, 2010 WL 4038826, at *7 (E.D.N.Y. Oct. 14,

2010)).  The type of property subject to a conversion claim in New York is limited to tangible

identifiable personal property, and "intangible property . . . that bear[s] a substantial similarity to

tangible property, like electronically stored data and other information . . . ."  In re Tashlitsky,

492 B.R. 640, 649 (Bankr. E.D.N.Y. 2013).  In other words, "business opportunities cannot be

converted."  Tashlitsky, 492 B.R. at 649; see also Nelly de Vuyst, USA, Inc. v. Europe

Cosmetiques, Inc., No. 11-CV-1491, 2012 WL 246673, at *8 (S.D.N.Y. Jan. 6, 2012) ("A right

to the benefits under a contract is not the type of intangible property interest . . . protected by the

law of conversion.").

Here, the Complaint does not allege the existence of property that can be subject to a

conversion claim under New York law.  The Plaintiff alleges that he negotiated a $300,000

payoff with Jemcap on his note and mortgage, but was unable to complete the transaction

because the defendants, including the Harris Beach Defendants, took the deal instead — and

stole the discount that the Plaintiff negotiated in the process.  In other words, the Complaint

alleges that the defendants took a business opportunity.  This is not the type of intangible

property that can be subject to a conversion claim.  For these reasons as well, the Plaintiff's

conversion claim against the Harris Beach Defendants is dismissed.

### d.  Count Four: Usury

The Harris Beach Defendants argue that the usury claim should be dismissed for several

reasons: because the Plaintiff was in default and therefore the applicable usury statute does not

apply; because the transaction in question contemplated an interest rate below the applicable

usury threshold; and because the Plaintiff fails to allege the existence of a usurious loan.  (Harris

Beach Motion to Dismiss 18-20, ECF No. 5.)  The Plaintiff responds that the defendants

attempted to force the Plaintiff into agreeing to a transaction that would have resulted in the

Plaintiff paying $81,000 in interest plus $12,000 in legal fees on a $300,000 loan, which would

have amounted to a usurious interest rate of 27%.  (Opp. to Harris Beach Motion to Dismiss

¶ 46, ECF No. 13.)  The Plaintiff further argues that under the New York Rules of Professional

Conduct, a lawyer is not allowed to counsel his client to engage in conduct that the lawyer knows

is illegal.  (Opp. to Harris Beach Motion to Dismiss ¶ 47, ECF No. 13.)

New York General Obligations Law provides, "No person or corporation shall, directly

or indirectly, charge, take or receive any money, goods or things in action as interest on the loan

or forbearance of any money, goods or things in action at a rate exceeding" sixteen percent

annually.  N.Y. Gen. Oblig. Law § 5-501 (McKinney 2015).  New York's criminal usury statute

provides that a person is guilty of criminal usury when he or she charges interest on a loan or

forbearance at a rate exceeding twenty-five percent annually.  N.Y. Penal Law § 190.40

(McKinney 2015).

Here, the Plaintiff fails to allege the existence of a contract between the Plaintiff and any

of the defendants, let alone a contract with a usurious interest rate.  In fact, at the November 18

hearing on the motion to dismiss, the Plaintiff's counsel specifically stated that the Plaintiff

never entered into a contract with the ERG Defendants:

> The Court: Well, okay, so you're saying that you were offered terms that were usurious?
> Counsel: Yeah.
> The Court: Which your client refused?
> Counsel: Yes.

(MTD Hr'g Tr. 28:4-8, ECF No. 22.)  According to the Complaint, instead of entering into a

contract with the ERG Defendants, the Plaintiff filed a lawsuit in order to "weaken the resolve of

the Defendants in their greedy scheme . . . ."  (Complaint ¶ 34, ECF No. 1.)

"It is well established that there can be no usury in the absence of a loan or forbearance of money . . . ." <u>Donatelli v. Siskind</u>, 565 N.Y.S.2d 224, 226 (N.Y. App. Div. 2d Dep't 1991). Here, there was no loan, so there was no usury. For this reason as well, the usury claim against the Harris Beach Defendants is dismissed.

### e.  Count Five: Fraudulent Inducement

The Harris Beach Defendants argue that the fraudulent inducement claim should be dismissed because the Complaint fails to allege any false statements made by the Harris Beach Defendants. The Plaintiff responds, in substance, that the Harris Beach Defendants were "intimately involved" in the scheming by the ERG Defendants, and as such should be liable for the ERG Defendants' fraudulent actions. (Opp. to Harris Beach Motion to Dismiss ¶ 34, ECF No. 13.)

"Proof of fraud under New York law requires a showing that '(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" <u>Wall v. CSX Transp., Inc.</u>, 471 F.3d 410, 415-16 (2d Cir. 2006) (quoting <u>Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.</u>, 98 F.3d 13, 19 (2d Cir.1996)). Federal Rule of Civil Procedure 9(b), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7009, provides that a party alleging fraud must "state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). "This pleading constraint serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits." <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 99 (2d Cir. 2007) "To satisfy this pleading threshold, the complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent.'" In re Ridley, 453 B.R. 58, 66 (Bankr. E.D.N.Y. 2011) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

Here, the Complaint does not contain factual allegations that support an inference that the Harris Beach Defendants made false representations to the Plaintiff.  The Plaintiff alleges that the ERG defendants "misrepresented their intentions by representing that they would" close the transaction as originally negotiated by the parties.  (Complaint ¶ 86, ECF No. 1.)  But the Complaint does not identify any statements made by the Harris Beach Defendants that were false, as required by Rule 9(b).  For these reasons as well, the fraudulent inducement claim against the Harris Beach Defendants is dismissed.

### f.   Count Six: Unjust Enrichment

The Harris Beach Defendants argue that because they were paid by their clients, the ERG Defendants, and not the Plaintiff, there can be no claim for unjust enrichment.  As with the fraud claim, the Plaintiff responds, in substance, that the Harris Beach Defendants were "intimately involved" in the scheming by the ERG Defendants, and as such should be liable for the ERG Defendants' unjust enrichment.  (Opp. to Harris Beach Motion to Dismiss ¶ 34, ECF No. 13.)

"'Under New York law, a plaintiff asserting a claim of unjust enrichment must show that the defendant was enriched at the plaintiff's expense and that equity and good conscience require the plaintiff to recover the enrichment from the defendant.'" Bigio v. Coca-Cola Co., 675 F.3d 163, 176-77 (2d Cir. 2012) (quoting Giordano v. Thomson, 564 F.3d 163, 170 (2d Cir.2009)). "The alleged enrichment must be 'specific' and 'direct.'" Finkel, 2014 WL 4364757, at *5 (quoting In re Bayou Hedge Funds Inv. Litig., 472 F.Supp.2d 528, 532 (S.D.N.Y.2007)).

Here, given that the unjust enrichment claim is predicated on the same factual allegations as the Plaintiff's insufficient claims for fraud, tortious interference, usury, and conversion, the circumstances alleged are not such "that equity and good conscience require" the Harris Beach

Defendants to compensate the Plaintiff.  For this reason as well, the Plaintiff's unjust enrichment claim against the Harris Beach Defendants is dismissed.

### **CONCLUSION**

For the foregoing reasons, the tortious interference with contract, tortious interference with prospective economic advantage, conversion, usury, fraudulent inducement, and unjust enrichment claims against the Harris Beach Defendants are dismissed.  The tortious interference with contract, tortious interference with prospective economic advantage, conversion, usury, fraudulent inducement, and unjust enrichment claims against the ERG Defendants are also dismissed.  The Court will issue a separate order.



**Dated: Brooklyn, New York**
**March 27, 2015**

**Carla E. Craig**
**United States Bankruptcy Judge**